**PANHANDLE EASTERN PIPELINE COMPANY and Trunkline Gas Company, Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9604–TA–33.

Tax Court of Indiana.

Jan. 3, 2001.

Francina A. Dlouhy, J. Daniel Ogren, Baker & Daniels, Indianapolis, Indiana, Attorneys for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

The petitioners, Panhandle Eastern Pipe Line Company and its subsidiary Trunkline Gas Company (collectively referred to as Panhandle), in these consolidated cases [1] appeal the final determinations of the Department of State Revenue (Department) covering the 1987–1990 tax years. In a Motion for Summary Judgment (Motion), Panhandle raises one issue: Whether Panhandle was entitled to a 100% exemption from Indiana use tax for equipment purchased and used in the distribution of natural gas (gas) [2] based on IND.CODE ANN. § 6–2.5–5–27 (West 2000).[3] In a cross-motion for summary judgment, the Department claims its calculations for the tax years at issue were warranted. For the reasons explained below, the Court finds for Panhandle and grants its Motion and denies the Department's cross-motion.

## ·FACTS AND PROCEDURAL HISTORY

Panhandle is a Texas-based company that owns a gas pipeline system that runs through Indiana. During the tax years at issue, Panhandle mainly transported gas that belonged to various third parties, but also transported some gas that belonged to it. The Department completed an audit of Panhandle on August 12, 1994, when it first issued a prorated exemption based on the actual amount of gas Panhandle publicly transported. On November 10, 1994,

---

**1.** The Court, sua sponte, formally consolidated this case with Cause No. 49T10–9604–TA–34 on September 27, 1997.

**2.** Neither party disputes the fact that Panhandle's equipment was used in the distribution of natural gas.

**3.** This section is also called the public transportation exemption. *National Serv–All, Inc. v. Indiana Dep't of State Revenue,* 644 N.E.2d 954, 956 (Ind.Tax Ct.1994).

Panhandle protested these findings. In its Final Determination issued on October 24, 1995, the Department affirmed its earlier finding and prorated the exemption awarded to Panhandle to reflect the actual percentage of gas publicly transported for third parties.[4] Panhandle filed its original tax appeal on April 19, 1996. The Court heard oral arguments from both parties for their respective motions on May 21, 1998. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

This Court reviews final determinations of the Department de novo and is not bound by either the evidence presented or issues raised at the administrative level. IND.CODE ANN. § 6–8.1–5–1(h) (West 2000); *State ex rel. ANR Pipeline Co. v. Indiana Dep't of State Revenue*, 672 N.E.2d 91, 93 (Ind.Tax Ct.1996). A motion for summary judgment will be granted only when there is no genuine issue of material fact, and the prevailing party is entitled to judgment as a matter of law. IND.T.R. 56(C); *ANR Pipeline Co.*, 672 N.E.2d at 93. Cross-motions do not alter this standard. *Bulkmatic Transp. Co. v. Indiana Dep't of State Revenue*, 691 N.E.2d 1371, 1373 (Ind.Tax Ct.1998).

### Discussion

In its Motion, Panhandle argues that it is entitled to a 100% exemption from Indiana use tax for the 1987–1990 tax years under section 6–2.5–5–27, while the Department argues in its cross-motion that its final determination of a prorated exemption was correct. The Court notes that tax exemption statutes are strictly construed in favor of taxation. *City Sec., Inc. v. Indiana Dep't of State Revenue*, 704 N.E.2d 1122, 1128 (Ind.Tax Ct.1998). To prevail, Panhandle must prove that it met the requirements of section 6–2.5–5–27.

IND.CODE ANN. § 6–2.5–2–1(a) (West 2000) states that "An excise tax, known as the state gross retail tax, is imposed on retail transactions made in Indiana." Section 6–2.5–2–1(b) states that "The person who acquires property in a retail transaction from a retail merchant is liable for the tax on the transaction and ... shall pay the tax to the retail merchant as a separate added amount to the consideration in the transaction."[5] IND.CODE § 6–2.5–3–2(a) (West 2000) states that "An excise tax, known as the use tax, is imposed on the storage, use or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction." IND.CODE § 6–2.5–5–27 states that "Transactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing public transportation for persons or property."

Panhandle argues that section 6–2.5–5–27 entitles it to either a 100% exemption or no exemption at all based on the amount of tangible personal property publicly transported. The Department believes that since the word "predominate" is not listed in the statute, it was justified in awarding a reduced exemption. (Resp't Br. at 6.)

Although the statute does not contain the word "predominate," the Department's position is unwarranted. Both the Indiana Court of Appeals and this Court have interpreted section 6–2.5–5–27 differently

---

4. The percentages of third-party gas transported by Panhandle were 70.05% for the 1987 tax year, 90.53% for the 1988 tax year, 88.68% for the 1989 tax year, and 86.62% for the 1990 tax year, while the percentages for Trunkline Gas were 62.94%, 68.54%, 71.56% and 82.86% for the 1987–1990 tax years respectively. (Pet'r Br. at 4.) The Department does not dispute the fact that the above-mentioned percentages reflect the amount of third-party gas that was actually transported during the tax years at issue.

5. That tax currently stands at 5% if the purchase price equals $1.10 or more. IND.CODE ANN. § 6–2.5–2–2(a) (West 2000).

than the Department. In *Department of Revenue v. Calcar Quarries,* 182 Ind.App. 84, 85, 394 N.E.2d 939, 940 (1979) the taxpayer was an Indiana company which operated a stone quarry, as well as two manufacturing plants. At trial, the company's manager testified that the company's hauling of property to its own job sites constituted no more than 10% of its crushed stone sales. *Calcar Quarries Inc.,* 394 N.E.2d at 941. In addition, the taxpayer testified that it hauled sand and other products that were not of its own operations. *Id.* The Court of Appeals held for the taxpayer, stating, "The evidence proves that Calcar ... transported property for consideration by highway and satisfied the State's definition of 'public transportation.'" *Id.*

Also, in *National Serv–All, Inc.,* 644 N.E.2d at 956–60, this Court dealt with a garbage company that transported both third party garbage (which the Court called Contract garbage) as well as its own. The Department believes that this case established a two-part test whereby the taxpayer must first prove that its property is being used predominately for public transportation. (Resp't Br. at 5.) Once this is met, the Department contends that it may allocate the exemption in a percent equal to the percent of predominate use. (Resp't Br. at 5.) The Department is mistaken. In *National Serv–All,* 644 N.E.2d at 959, the Court stated that "If [the taxpayer] predominately hauled Contract garbage, it is entitled to the exemption; if it predominately hauled non-Contract garbage, it is not." Although the Court ultimately found against the taxpayer (finding that the taxpayer's hauling of Contract garbage did not constitute a predominate use), *id.* the case does not contain language that would support the Department's position.

Additionally, in *Indiana Waste Systems of Indiana, Inc. v. Indiana Department of State Revenue,* 644 N.E.2d 960 (Ind.Tax Ct.1994), a case similar to *National Serv–All,* the taxpayer was a garbage company that used its trucks to haul garbage for both the City of Indianapolis as well as private residents. As in *National Serv–All,* the taxpayer was seeking the public transportation exemption. In holding against the taxpayer, the Court noted that in any year, no more than 17.7% of the taxpayer's income was from its contract with the city. *Indiana Waste Systems,* 644 N.E.2d at 962. The Court further stated that, "If the carrier is not predominately engaged in transporting property of another, it is not entitled to the exemption." *Indiana Waste Systems,* 644 N.E.2d at 961. The Court concluded by saying, "The predominant use of Waste Management's trucks and other items, therefore, is not exempt, and Waste Management is not entitled to the public transportation exemption."[6] *Id.* at 962.

■ The Court finds that the public transportation exemption provided by section 6–2.5–5–27 is an all-or-nothing exemption. If a taxpayer acquires tangible personal property for predominate use in providing public transportation for third parties, then it is entitled to the exemption. If a taxpayer is not predominately engaged in transporting the property of another, it is not entitled to the exemption. Both Panhandle and the Department agreed that Panhandle transported a large amount of third-party gas for the tax years at issue. *Supra* at 818, n. 4. Unlike the taxpayers in the *National Serv–All* and *Indiana Waste Systems* cases, Panhandle designated evidence for each of the tax years showing that it predominately transported gas for other third-parties. *Supra* at 817 n. 2; (Pet'r Mot. Summ. J., Ex. A.) Finding no genuine issue of material fact, the Court holds that Panhandle is entitled to summary judgment in its favor.

**6.** The Court has recently dealt with a similar issue. *See Meyer Waste Systems, Inc. v. Department of Revenue,* 741 N.E.2d 1 (Ind.Tax Ct.2000).

## CONCLUSION

For the reasons mentioned above, the Court finds that Panhandle is entitled to summary judgment in its favor. The Court GRANTS Panhandle's Motion and DENIES the Department's cross-motion.